· STILWELL a. THE MAYOR, &c., OF NEW YORK.

New York Common Pleas; General Term, May, 1863.

MUNICIPAL CORPORATIONS.—PUBLIC OFFICERS.*

A city corporation may be compelled to pay the expenses incurred by one of its officers, by the employment of his own counsel, in a contest to gain the possession of its property, in the. result of which it is interested; and an act of the

---

* In the Matter of Charges against MATTHEW T. BRENNAN and others (before the Governor of New York, at Albany, September 27, 1865), the jurisdiction and power of the governor to remove municipal officers for official misconduct, and the mode of proceeding, were declared by him.

Certain charges and specifications of malversation and misconduct in office, violation and neglect of official duty, and corruption, against C. Godfrey Gunther, mayor of the city of New York; Matthew T. Brennan, comptroller of the city of New York; Francis I. A. Boole, city inspector of said city; and John E. Develin, corporation counsel of said city, duly verified, were submitted to his excellency, Reuben E. Fenton, governor; and application thereon made to him for the removal of said officers of the State of New York. The governor furnished each of said officers with a copy of the charges and specifications, and summoned them to appear and answer thereto on Tuesday, the 26th day of September, 1865, at 10 o'clock in the forenoon, at the executive chamber at the Capitol.

One of the charges was made by James Gregory against all of said officers for violation of official duty and corruption in awarding the contract for cleaning the streets of New York to Brown, Devoe and Knapp, who were not the lowest re-

Legislature allowing the charge as proper, and directing the supervisors to raise it by tax, is conclusive on the city.

Where an act of the Legislature has declared a claim against the city valid, and has provided the means and manner of raising the money to pay it, it becomes

sponsible bidders for the work ; such contract having been made by these officers as commissioners, in pursuance of the Laws of 1865, ch. 646, § 1.

One of the charges was made by Edward F. Plum against the city inspector for malversation and misconduct in office, neglect, and violation of duty.

One of the said charges was made by Anson Herrick and others against the comptroller for the same causes.

One of the said charges was made by Thomas N. Carr against the corporation counsel for the same.

On the 26th of September all of the accused officers, and the prosecutors, with their respective counsel, assembled at the Capitol and appeared before Governor Fenton in obedience to the summons.

*James Emott* and *Nelson J. Waterbury* appeared to prosecute the charge against the street-cleaning commission.

*John McKeon* appeared to prosecute the charges against the comptroller on behalf of the Citizens' Association.

*Joseph F. Daly* appeared to prosecute the charges against the city inspector and the corporation counsel on behalf of the Citizens' Association.

*James T. Brady* and *Abraham R. Lawrence, Jr.*, for the comptroller.

*John H. Reynolds*, for the corporation counsel.

*Hamilton Harris*, for the city inspector.

*John H. Anthon,* for the mayor.

The charges and specifications were then read, as well as the several answers of the parties accused.

It was admitted by the prosecution that no case was made out against the mayor.

All the other accused officers united in the following preliminary objections :

1st. That the governor had not power to remove these officers.

2d. That even if he had such power, he had no right to try the issues presented by the answers, but must send them to the district attorney of the city and county of New York to take proof before a county judge and a jury.

The prosecution relied upon the Constitution, Art. X., sections 1, 7, and 8 ; the charter of New York city of 1857, § 20 ; and the act of 1863, ch. 68, § 1.

GOVERNOR FENTON.—The objections to the governor's jurisdiction and the arguments of counsel upon both sides have been carefully considered by me, and I am clearly of the opinion—

*First.* That the Constitution and the laws have conferred upon the governor full jurisdiction in these cases.

*Second.* That the investigation may be heard before me.

the duty of the comptroller to settle and adjust it, whether the act directs him to draw his warrant or not; and the insertion of such a direction in the act does not confine the remedy of the creditor to proceeding by mandamus against the comptroller; but upon his refusal to draw a warrant for the sum, an action lies for the amount against the city.

Appeal from a judgment overruling a demurrer.

The allegations of the complaint in this action, which was brought by Benjamin M. Stilwell and Shubael E. Swain, were as follows:

On the 24th day of December, 1860, Nathan C. Platt was duly removed from the office of city chamberlain, and on the same day Daniel Devlin was duly appointed to that office, and being qualified, he entered upon the discharge of the duties of the office, and selected the Broadway Bank as the depository of all moneys belonging to the city and county of New York.

While Platt was in office, he had selected the Park Bank as the depository of these moneys, and at the time of his removal, and Devlin's appointment, there was in that bank upwards of four millions of dollars of these moneys deposited by Platt as such chamberlain.

After his removal, Platt refused to deliver to Devlin the books, papers, and securities in his hands, or to order the transfer of the moneys to the Broadway Bank.

And the Park Bank refused to transfer the moneys deposited with it to the Broadway Bank.

---

*Third.* That the testimony taken before me may be reduced to the form of affidavits, and sworn to, as the power is expressly given by the laws to the governor to administer an oath whenever an affidavit is required in any proceedings before him.

While, therefore, I feel bound to hold that the governor has the power to remove in these cases, I am equally bound, by a sense of justice to individuals holding high offices, by my duty to the public, and by my own position, not to exercise the right, except upon clear, positive, and undoubted proof of the charges preferred.

The secretary then read, by direction of the governor, the opinion of Governor Seymour in the case of Thomas C. Acton, when charges were made against him before the governor. This opinion declared the jurisdiction and power of the executive as here laid down by Governor Fenton. (See minutes of the governor in the proceedings against Acton, at the Capitol, Albany.)

The governor afterwards appointed a time and place in the city of New York to hear and determine the charges.

Stilwell *a.* The Mayor, &c., of New York.

Whereupon, the plaintiffs Benjamin M. Stilwell and Shubae E. Swain, at the request of Devlin, instituted legal proceedings against Platt, to obtain the books, papers, &c., and against the Park Bank, to compel the transfer of the moneys; in both of which proceedings they were successful.

The complaint further alleged that, upon the appointment of Platt, a litigation arose between him and his predecessor as to the title to the office, and that for the purpose of settling the ambiguities of the law under which the appointment was made, they, at the request of Devlin, prepared a bill, which they presented to the Legislature, and appeared in person and by counsel before the committee, to whom the bill was referred, and were successful in obtaining its passage. That in all the legal proceedings, as well as in the arguments before the committee at Albany, various eminent counsel were employed, and their fees, charges, and expenses were paid by the plaintiffs at the request of Devlin—which fees and charges amounted to and were reasonably worth the sum of $22,765.67; that the plaintiffs prepared a bill for that amount against Devlin, but believing that such expense was a proper charge against the city, they presented their bill to the Legislature, who referred it to the committee having the tax-levy in charge; that the committee, after investigation and hearing counsel, recommended its insertion in the tax-levy; that thereupon the Legislature passed the Act of April 17, 1861, three-fifths being present, empowering the supervisors of the city and county of New York to raise the sum of twenty-two thousand seven hundred and sixty-five dollars and sixty-seven cents ($22,765.67), which the act declared should be paid to the chamberlain for the expenses incurred by him, and directing the comptroller to draw his warrant in favor of the city chamberlain for that amount. That the amount has been raised by tax, has been collected, and is now in the city treasury, and cannot be applied to any other purposes than the payment of Devlin's expenses.

That Devlin has assigned to the plaintiffs the claim against the city and county of New York, of which assignment the comptroller has notice.

The defendants demurred to this complaint, upon the ground that it did not state facts sufficient to constitute a cause of action.

The demurrer was overruled at special term, and judgment entered for plaintiffs, and the defendants appealed.

*John E. Develin* for the appellants.—I. The retainer of the plaintiffs by Devlin, and the rendition by them of the services mentioned in the complaint, did not create any liability against the plaintiff.

*a.* The corporation was entirely competent to protect and vindicate any interests it might have in the controversy between Devlin and Platt. It cannot, therefore, be held responsible for costs, charges, and expenses incurred in legal proceedings instituted without its authority, to which it was not a party, and in the management and prosecution of which it had no voice or control.

*b.* As city chamberlain, Devlin had no power to employ counsel at the expense of the corporation; as the officer of the corporation, he was the custodian of the corporate funds, and the paymaster of its indebtedness. (*Charter*, 1857, §§ 22–26.)

Special acts of the Legislature were deemed necessary to empower the comptroller to employ counsel, other than the counsel to the corporation, to institute legal proceedings in which the corporate interests were involved. (*Valentine's Laws*, p. 739, § 5; *Ib.*, p. 1,233, § 9.)

*c.* Even an ordinance of the common council, assuming the payment of the expenses incurred by Devlin, would have been ineffectual to create any liability against the corporation. (Ramson *a.* Mayor, 24 *Barb.*, 226; Roberts *a.* Mayor, 5 *Abbott's Pr.*, 42; Halstead *a.* Mayor, 3 *Comst.*, 430.)

II. The act of 1861 does not create any liability against the defendants.

*a.* The intention of the Legislature in inserting in the tax-levy the provision relied upon by the plaintiffs, was, as is declared by the language of the act, to reimburse Devlin for expenses incurred by him in procuring a transfer to himself of the books and securities of the office of chamberlain, and in defending and establishing his title to that office. (*Laws* 1861, pp. 669, 670.) It is apparent, both from the language used in the act, and the means employed to realize the desired sum of money, that it formed no part of the intention of the Legislature to make the corporation Devlin's debtor to that amount.

The Legislature, in passing the act in question, were not engaged in creating a debt, but in imposing a tax. It was not their design to impose the burden of reimbursing Devlin upon the corporation of New York; but, as they have declared in the act, that burden was to be borne by the taxable estates in the county of New York. It is submitted, therefore, that the Legislature, in imposing a tax upon the taxable estates in the county of New York, did not create a debt against the corporation of the city of New York.

III. If the effect of the act is to create a debt against the corporation, then it is unconstitutional and void.

a. The corporation of the city of New York is possessed of real estate and other property. (*Montgomery Charter*, § 1; *Davies' Laws*, p. 165; *Ib.*, p. 199.) As regards its private property, and its disposition, the rights of the corporation are as perfect, and it is as free from legislative control, as is any private individual in the possession and enjoyment of his property. The creation, therefore, of a debt against the corporation, which can be enforced by suit, judgment, and execution, is beyond the power of the Legislature, and a violation of the constitutional rights of the defendants. (*Const.*, art. 1, §§ 1, 6; Taylor a. Porter, 4 *Hill*, 145; Wynehamer a. People, 3 *Kern*, 392; Powers a. Bergen, 2 *Seld.*, 358; Van Valkenburgh a. Mayor—Opinion of *Clerke, J.*; People a. Haws, 37 *Barb.*, 440, 454.)

IV. The refusal of the comptroller to draw his warrant in favor of Devlin, as directed by the act, does not render the corporation liable.

a. The act imposes no duty upon the corporation. In the payment of the money, the comptroller does not act as the officer or agent of the corporation, nor does he owe any duty to the corporation with respect to the fund. The corporation having no interest in, or control over the fund, could not compel the comptroller to draw his warrant as directed by the act.

The true relation of the comptroller to this fund, is that of a *quasi* civil officer of the government, and for his omission to perform a duty specifically imposed upon him by statute, the corporation cannot be made responsible. (Martin a. Mayor, 1 *Hill*, 550.)

V. The defendants cannot be held liable, as for money had and received to the use of the plaintiffs.

*a.* The money sought to be recovered, is the gift of the Legislature to Devlin.

In order to complete and perfect this gift, we find the Legislature making use of various agencies. They declare that the desired sum shall be realized out of the taxable estates in the county of New York. They constitute the Board of Supervisors their agents, to levy the tax and raise the money. They make the comptroller their agent, for the payment of the money to Devlin. No duty is imposed upon the corporation, nor can any obligation upon their part to pay this money to Devlin be fairly implied from the circumstances of the case.

*b.* The mere fact that one party has in his possession money due to or belonging to another, has never been regarded as a sufficient foundation for an action for money had and received. There must be either some agreement or promise to pay the money, or some positive duty imposed upon the party having possession of the money to pay the same. (Bigelow *a.* Davis, 16 *Barb.*, 561, and cases cited.)

*c.* The action is without precedent. If the plaintiffs are entitled to the amount claimed, their remedy is to compel the comptroller by mandamus to obey the legislative command and direction.

The experiment of an action was doubtless resorted to in order that, if successful, they might increase the gift of the Legislature by the addition of interest.

*L. B. Woodruff*, for the respondents.—I. In the discharge of his duty, the chamberlain, Mr. Devlin, was subjected to the expense and liabilities stated in the complaint.

The fact that they were incurred, their necessity, and that they were worth the sum stated, is admitted by the demurrer.

His appointment and acceptance of the office, his official oath and bond, bound him to the city for the due performance of his duties; and the protection of the city, in the department of finance, was devolved upon him as the legal guardian of the city treasury.

1. The corporation could not, in its own name, have maintained the summary proceedings to compel the delivery of the

books and papers to the new chamberlain ; and yet they were indispensable to the proper conduct of affairs and the due preservation of the records of the office. By the statute, the successor to the office is the only party authorized to demand possession of the books and papers, or to take proceedings to recover the same. (1 *Rev. Stat.* [125, § 51], 5th ed., 417, § 63.)

2. By the act of 1860 (*Laws of* 1860, 953), the chamberlain is declared "the custodian" of the funds of the city, and on his designation the Broadway Bank became the legal depository of such funds.

On the refusal of the Park Bank to transfer the funds, it became the duty of the "legal custodian" of the money to institute proceedings to compel the transfer. The expenses and liabilities incurred by the chamberlain, therefore, made the city, for whose benefit they were incurred, debtor to him. They were incurred by him in the due discharge of official duty. He would have been derelict, if he had neglected the performance of the duty. The duty being upon him, it being a duty to be performed in behalf of, and for the benefit of the city, a request by the defendants, to perform it, is implied. A servant of the corporation has authority to perform his duty, and is entitled to be indemnified against loss or expense. Public officers have an implied authority, as incident to their office, to bring all suits which the proper and faithful discharge of their official duties requires. (Overseers *a.* Overseers, 18 *Johns.*, 407 ; Todd *a.* Birdsall, 1 *Cow.*, 260, notes p. 261–4, and cases cited ; Jansen *a.* Ostrander, *Ib.*, 670 ; Palmer *a.* Vandenburgh, 3 *Wend.*, 193 ; Armine *a.* Spencer, 4 *Ib.*, 407 ; Supervisors of Galway *a.* Stimson, 4 *Hill*, 136 ; see also Silver *a.* Cumings, 7 *Wend.*, 181 ; Avery *a.* Slack, 19 *Ib.*, 50 ; Cornell *a.* Town of Guilford, 1 *Den.*, 515.) *A fortiori*, this is true of the employment of means which a statute has provided.

Such officers are therefore entitled to indemnity for expenses incurred by them in their resort to legal measures which become necessary to the due performance of official duty. This follows from the analogous rule, that officers sued for acts done by them as such in the course of their agency, and pursuant to their authority, are entitled to be reimbursed the expenses of their defence. (Powell *a.* Trustees of Newburg, 19 *Johns.*,

284 ; 11 *Ib.*, 439 ; 1 *Day*, 522; and 8 *T. R.*, 308, 610 ; 1 *Binn.*, 441.)

Public offices in this State have not the character of grants; they are agencies. It is upon that principle that it is held that public officers have no vested right to the unearned emoluments of office. (Connor *a.* The Mayor, &c., 5 *N. Y.* (1 *Seld.*), 285 ; S. C., 2 *Sandf.*, 355; Philips *a.* The Mayor, 1 *Hilt.*, 483.)

II. That provision of the charter which provides that no expenses shall be incurred by any of the departments, unless a previous appropriation therefor has been made, has no application to this subject.

1. That relates to their power to make engagements and incur debts on behalf of the city. The chamberlain did not attempt to do any thing more than discharge his own duty, and he became himself liable for the expenses. It is the implied obligation of the city to indemnify him, upon which we here insist. That is an obligation resulting from the relation; it is implied by law, and is not a contract made by the officer on behalf of the city.

2. If there was originally any force in this suggestion, the act of 1861 removes it. That act gave legislative sanction to the acts of Devlin, and left the obligation to indemnify him perfect; especially, since it at the same time provided the city with the money wherewith to make such indemnity.

A contract which is invalid only because so declared by a statute founded in public policy, becomes valid if the invalidating statute is repealed. (Washburn *a.* Franklin, 13 *Abbotts' Pr.*, 140 ; Central Bank *a.* Empire Stone Dressing Co., 26 *Barb.*, 23 ; Curtis *a.* Leavitt, 15 *N. Y.*, 9 ; People *a.* Livingston, 6 *Wend.*, 256 ; Tucker *a.* Trustees of Rochester, 7 *Ib.*, 254.)

III. The defendants are liable, not only because the claim is for an indebtedness by the defendants upon the grounds above stated, but also because the money has been raised " on account of the corporation of the city of New York," for a special designated purpose (viz., payment to Mr. Devlin), and has been paid to the defendants for that purpose, received by them, and still held.

The defendants have, therefore, received so much money to the use of Devlin, and are legally liable therefor. The liability

to pay it over was a direct and immediate consequence of their receiving the money for the purpose, to which the statute directed its appropriation.

An action of assumpsit could, therefore, be maintained upon an implied promise founded on such legal liability. (Chancellor in Van Hook a. Whitlock, 3 *Paige*, 409.)

IV. The act was binding on the city. Similar legislation has been the common usage. Twenty-five years will suffice for the purpose of this examination. (*Laws of* 1836, 201 ; *Id.*, 1837, 99, 321 ; *Id.*, 1847, 172 ; *Id.*, 1848, 46 ; *Id.*, 1849, 545 ; *Id.*, 1858, 490 ; *Id.*, 1859, 1113–14, 1124, 1126 ; *Id.*, 1862, 751 ; *Id.*, 1863, 168.)

But there is no real doubt of their validity. The Legislature has power to levy a tax upon the taxable property of a town, and to appropriate it to the payment of a claim of an individual against the town. (Town of Guilford a. Supervisors of Chenango, 13 *N. Y.*, 143 ; S. C., 18 *Barb.*, 615, 620, 632–4, 643–4.) This is true, even though the claim of the individual was not theretofore recoverable by action against the town. *Ib.* (In Cornell a. Guilford, 1 *Den.*, 510, the individual had failed to recover.) (The People a. The Mayor, &c., of Brooklyn, 4 *Comst.*, 423 ; Thomas a. Leland, 24 *Wend.*, 65 ; Brewster a. City of Syracuse, 19 *N. Y.*, 116.)

If the party to whom the money is to be paid could not recover it when raised, the legislative will, expressed in a valid form, could be defeated.

V. Whether a mandamus would issue or would not issue, addressed to the subordinate officer, is not the question. The general rule is, no doubt, that where an action will lie for the money, a mandamus will not be issued to compel its payment. The defendant will be permitted to contest the claim in the ordinary mode of determining controversies.

Yet there are cases in which, although an action would lie against a corporation, yet where the right is fully established and recognized, and some ministerial act only remains to be done, a mandamus will issue to compel a subordinate officer to perform the act. (See The People a. Flagg, 16 *Barb.*, 503 ; The People a. Haws, 21 *How. Pr.*, 178 ; The People a. Flagg, 17 *N. Y.*, 584.)

The liability of the corporation being established, an action

cannot be defeated by showing that the plaintiffs might resort to another remedy.

The true argument is applicable to an attempt by the plaintiffs to obtain a mandamus. On such an application the general rule above mentioned could be invoked—viz., if a liability be shown for which an action would lie, the motion must be denied.

Here the money has been collected and paid to the defendants. They refused to pay it; they retain it in their treasury, over which they have legal control. As against them, the plaintiffs have a right to have the money; and if so, an action will lie for it.

By THE COURT.—BRADY, J.—The question upon which there is a difference of opinion between Judge Daly and myself, is whether an action can be maintained against the defendants, assuming that they have in their custody, and under their control, the money specially appropriated by the Legislature of this State for the payment of the plaintiffs' demand.

The claim for services rendered by the plaintiffs to the city chamberlain, the plaintiffs regarded as a proper charge against the city of New York; and the tax-levy for the year 1861 being then before the Legislature, they presented their bill to that body, and the result was a provision in the act of 1861, passed April 17, by which the supervisors were empowered and required to cause to be raised by tax, " on account of the corporation of the city of New York," the sum claimed as before mentioned, which was to be paid to the chamberlain, and in whose favor the comptroller was authorized and directed to draw his warrant for that sum. The sum was raised in the manner prescribed, and paid into the city treasury.

The city chamberlain is an officer of the city, as his title imports, and the chief officer of a bureau in the department of finance (*Charter of* 1857, §§ 21, 22), for the reception of all the moneys paid into the treasury of the city, and for the payment of moneys on the warrants drawn by the comptroller, and countersigned by the mayor and clerk of the Common Council (*Charter of* 1857, § 22). He is the custodian of the funds belonging to the city of New York (*Laws of* 1860, 953), and the struggle for such funds, and the books, and papers, and vouchers

connected with the bureau, was one in the result of which the defendants were interested. The expenses of the litigation, which the newly appointed chamberlain was obliged to incur, were, therefore, though pertinent to the assumption and discharge of his duties, indirectly advantageous to the defendants, who had exercised the power of removal and appointment.

Whether this be so or not, however, is not material to the disposition of the question under consideration. The Legislature determined that the charge was a proper one against the city, as they had done before in an analogous case (see *Laws of* 1858, 490), and they directed the supervisors to raise the money by tax, " on account of the defendants," to pay it. The Legislature, having recognized the validity, or established the validity of the claim against the city, the right to do which is not to be questioned (Town of Guilford *a*. Supervisors of Chenango, 13 *N. Y.*, 143), the liability of the defendants was admitted and determined.

The Legislature went further, however. They provided by what means and in what manner the money should be raised to meet the obligation, and directed the comptroller to draw his warrant for the sum. There can be no doubt that it was wholly unnecessary to insert the direction to the comptroller to draw the warrant. The claim having been established, it became his duty, under section 22 of the charter of 1857, " to settle and adjust it," and the direction cannot be regarded *per se* as a special enactment, taking the particular sum under consideration from the general duties which the comptroller is required by law to discharge, under the charter, in reference to claims against the city. The result would be precisely the same, whether the act contained the specific direction or not, there being nothing in the language of the act, or in its general purpose or design, indicating an intention to make the claim of the chamberlain an exception to the general or admitted obligations of the defendants, or the comptroller a special depository or custodian of the fund to meet it. On the contrary, the act of 1861 authorizes the supervisors to raise, on account of the corporation, a sum in gross for certain purposes; and the purposes then being set out in detail, the sum due to the chamberlain, and by him assigned to the plaintiffs, appears among

them.   The warrant contemplated by the act to be drawn by the comptroller would not be good, unless countersigned by the mayor and clerk of the Common Council, as provided by the charter of 1857, there being nothing in the direction relied upon excepting it from the provisions of that law ; a circumstance which bears directly upon the proposition, that the Legislature intended to and did create a liability on the part of the defendants, which they furnished the means to discharge. But the warrant being drawn, would be drawn against the funds of the defendants, in the treasury there deposited, under the general appropriation which embraced the claim in question, and not against any fund specifically deposited with the comptroller.

The provisions of the act of 1861 contain directions to the defendants, in terms, to appropriate, of the money to be raised by tax, an amount sufficient to pay the sum due to the chamberlain ; and that established their liability to him or his assignees. The direction expressly contained to the comptroller, was the mere declaration of a legal duty imposed by law upon that officer, in reference to the funds and debt of the defendants ; which was unnecessary, either to accomplish the plaintiffs' right to recover, or the defendants' obligation to pay, and did not create a special relation between the chamberlain and the comptroller.   For these reasons, without considering this matter further, I think it clear that the defendants were, by the act of 1861, rendered liable to the plaintiffs to pay the sum demanded, and, being liable, this action can be maintained ; that the liability established is not controlled in any way by the direction to the comptroller to draw his warrant, that being his duty in reference to all claims against the city, and there being nothing in the act of 1861 isolating the sum due to the plaintiffs, as assignees of Devlin, from the general rules of law governing the remedy against the defendants upon claims established.

The judgment should be affirmed.

DALY, F. J. (dissenting).—By the 22d section of the amended Charter of 1857 (*Laws of* 1857, 879), the chamberlain is the chief officer of one of the bureaux of the department of finance ; and by the 26th section, the law department has the charge

and conduct of all the law business, both of the corporation and of the departments. If the corporation are chargeable with the expense of proceedings instituted by any officer of the departments to obtain possession of the city property belonging to his department, then it is, under the charter, law business of the corporation, or of the particular department, and must be placed in the charge of, and be conducted by, the appropriate officer of the law department. If the officer employs other legal aid to conduct the proceeding, he does so at his own cost, and has no claim against the city to be indemnified for expenses so incurred. It was held in Powell *a.* The Trustees of Newburg (19 *Johns.*, 284), that the trustees of an incorporated village, who had incurred expense in defending themselves in a suit brought against them for an act done in the faithful discharge of their duty, could maintain an action against the corporation to recover the expense thus incurred, upon the ground that the principal is liable for the expense necessarily incurred by an agent in managing the principal's affairs or in protecting his interests; but if the protection of the interests of the principal involves the institution or the defence of a lawsuit, and the principal has designated who in that event is to conduct and manage it, the agent would be acting wrongfully in employing anybody else, and would not necessarily, in such a case, have the legal right to insist that the principal should repay what the agent disbursed to the person he saw fit to employ. In the present case, a law department has been created by an act of the Legislature for conducting all the law business relating to the corporation, or any of the departments, the officers of which receive compensation in the form of fixed salaries, which are paid to them out of the city treasury for attending to this duty; and such being the case, it would be defeating the intention of the Legislature to hold that every officer connected with the city government might employ private counsel in all matters arising in connection with his office, and impose upon the city the payment of the additional expense thus incurred.

It remains, then, but to consider whether the act of the Legislature of April 17, 1861, coupled with the refusal of the comptroller to comply with the provisions of that act, gives the plaintiff a right of action against the corporation. In my judg-

ment, it does not. There is no doubt of the power of the Legislature to pass such an act (Town of Guilford a. Supervisors of Chenango Co., 13 *N. Y.*, 143), but by its passage they have imposed no duty upon the corporation as such. They have directed that the supervisors of the county should raise by tax the sum of $22,765.67, which shall be paid to the chamberlain to reimburse him for expenses incurred by him in procuring the transfer of the books, securities, and funds of his office from his predecessor, and in defending and establishing the title to the office; and they have directed the mode in which this sum shall be paid, by authorizing and directing the comptroller to draw his warrant for the amount in favor of the chamberlain. The supervisors have complied with the requisitions of the act. The amount has been raised by tax, and is in the city treasury, but the comptroller has refused to draw his warrant for it in favor of the chamberlain. The act was one which he was specifically empowered and directed by the Legislature to do, and I do not see, because he refuses to do it, that an action can be maintained against the corporation for the recovery of the amount. The corporation have in this matter no authority over him. He is neither appointed by nor removable by the corporation; and though connected with it in the administration of the city government, he is, in a certain sense, an independent officer, elected by the people. "No case has been cited," says Cowen, J., in Martin a. The Mayor of Brooklyn (1 *Hill*, 551), "wherein it has been holden that municipal corporations are liable for omissions of duty specifically imposed by statute on one of their officers. In this respect," he says, "the latter are *quasi* civil officers of the government, though appointed by the corporation. The relation of master and servant does not exist between the corporation and officer." And in the elaborate brief submitted by the very able counsel who argued the case for the plaintiff, no authority has been cited showing that, under circumstances like this, an action would lie against a municipal corporation. Where a statute imposes, as in this case, a duty upon a public officer, he is responsible for the neglect of that duty to any person sustaining damage, and the plaintiff's remedy is either by an action against the comptroller, or by a proceeding to compel him to perform the duty enjoined by the Legislature. (Barry a.

Arnould, 10 *A. & E.*, 646; Lacon *a.* Hooper, 6 *T. R.*, 224; *Grant on Corporations*, 384; *Tapping on Mandamus*, 176.)

The judgment should have been for the defendant, on the demurrer.

Judgment affirmed.